FILED

2009 Sep-22  PM 03:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JUNE ALLEN PRIDE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 5:08-cv-1195-LSC-TMP |
| | ) | |
| BILLY MITCHEM, and the | ) | |
| ATTORNEY GENERAL OF THE STATE | ) | |
| OF ALABAMA, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION

This cause is before the court on the petition for writ of *habeas corpus* filed by the petitioner, June Allen Pride, on July 3, 2008.[1] Petitioner was convicted after a jury trial in the Circuit Court of Colbert County, Alabama, of the offense of first-degree robbery, and he is currently serving a sentence of life in prison as a habitual offender.

### Procedural History

Following a jury trial, petitioner was convicted of first-degree robbery on February 17, 2004, in the Circuit Court of Colbert County, Alabama. He was represented at trial by retained counsel Terrinell Lyons, who also is petitioner's niece. He was sentenced to life in prison as a habitual offender on February 26, 2004. At the sentencing hearing, attorney Billy Underwood also appeared for petitioner, along with Lyons.

---

[1] Although the Clerk received the petition on July 8, 2008, the postmark on the envelope indicated that it was mailed on July 3, 2008. Under the "prison mailbox rule," the petition is deemed filed on the date of mailing, July 3, 2008.

Petitioner appealed to the Alabama Court of Criminal Appeal, which affirmed his conviction and sentence on January 7, 2005.  In doing so, the appellate court described the evidence against petitioner this way:

> The facts adduced at trial indicate that on March 21, 2003, Pride was at the home of Daniel Duke, watching television.  Duke had received his income tax refund and had been discussing the fact that he planned to purchase an automobile for his fiancee.  Pride stood up to leave and pulled out a gun.  Pride cocked the gun, pointed it at Duke's head, and told Duke to give him all of his money.  Duke thought it was a joke, but soon realized Pride was serious.  Duke gave Pride the $950 he had in his pocket.  Pride left the house.
>
> Duke called the police.  Pride's cell phone number was on the caller identification box at Duke's home, and the police called the number, but did not reach him.  The police discovered that Pride was apparently registered at a local hotel.  Later in the day, Pride returned the call from the police and spoke to Detective Greg Ray.  The recording of the conversation was played for the jury.  During the phone call, Pride claimed to have been in Cleveland, Ohio, during the robbery.  He claimed he was still, at that time, in Cleveland, Ohio.  Because the number from which Pride was calling registered as "private" on the police station's caller identification system, Detective Ray requested that Pride call from a nonprivate, local number, collect if necessary, to establish that Pride was, in fact, in Cleveland.  Pride agreed and hung up.  Pride never called back.

(Petitioner's Ex. X-1).  The court notes that, in addition to this summary of the trial evidence, the petitioner has provided the court with excerpts of his trial transcript.  From these excerpts, it is possible to discern that Pride was positively identified as the robber by both the victim, Duke, and Duke's tenant, Shawn Glover, both of whom knew Pride.[2]  Moreover, two other witnesses testified that Pride had been present at the Duke home the evening of the robbery, although they did not witness the robbery itself.  When police were called to investigate the robbery, Duke and Glover

---

[2]     Glover testified that he was living with Duke and paying him rent at the time of the robbery.

showed them the telephone number on the telephone's caller ID display that they said was Pride's, and they recounted to police that Pride told them that he and his girlfriend were staying in a local motel that night because they had been evicted from their residence.  Police located a motel at which a "June Pride" had filled out a registration card for the night of the robbery.  Although the motel owner testified that he was not present when the card was filled out, it was filled out in the name of "June Pride," with an address in Florence, at which petitioner's mother lived.  Further, the card contained a description of his vehicle as a "white Taurus," and gave an Alabama driver's license number that was only two digits dissimilar to Pride's actual license number.[3]

The only issue raised on appeal was the argument that a proper predicate had not been established for admission of the tape recorded phone conversation between Detective Ray and Pride.  The court of criminal appeals rejected the argument, pointing out that Detective Ray had testified to the circumstances of the making of the recording, and that Duke testified that he had listened to the recording, that he knew Pride, and that he had no doubt that the voice on the recording was Pride's.  The court concluded that this was an adequate basis for admitting the recording into evidence.

There is no indication that petitioner sought *certiorari* review in either the Alabama Supreme Court or the United States Supreme Court.

Petitioner filed his state Rule 32 post-conviction petition on March 14, 2005, asserting the same grounds of ineffective assistance of counsel as are alleged in the instant *habeas* petition.  The Rule 32 petition was denied by the trial court without a hearing on April 12, 2006, which was

---

[3]      Detective Ray testified that petitioner's Alabama driver's license number was 59**37**1**5**4, while the number given on the motel registration card was 59**27**3**5**4.

affirmed on appeal by the Alabama Court of Criminal Appeals on May 18, 2007.  With respect to

the ineffective assistance claims, the Alabama appeals court wrote:

> Lastly, we note that the appellant, in an amended petition, raised an additional twenty-three ineffective assistance of counsel claims.  Most, if not all, of the claims address trial counsel's failure to make certain objections at trial.  We have reviewed the State's responses to those claims, and agree that they are nothing more than bare allegations completed [*sic*] unsupported by fact or law,  Rule 32.6(b), A R. Crim. P.; See also <u>Boyd v State</u>, 746 So. 2d 364, 406 (Ala. Crim. App. 1999) ("Rule 32.6 (b) requires that the petition itself disclose the facts relied upon in seeking relief.") "[I]t is not the pleading of a conclusion, which, it [*sic*] true, entitles the petitioner to relief. It is the allegation of facts in pleading which, if true, entitle the petitioner to relief, and to present evidence proving those alleged facts." <u>Boyd v. State</u>, 913 So. 2d 1113, 1125 (Ala. Crim. App. 2003).  Because, as the State argues, the appellant failed to meet his burden of pleading and proving by a preponderance of the evidence, facts necessary to entitle him to relief, the trial court was correct in summarily dismissing the claims.  Rule 32.6(b), A. R. Crim. P.

(Respondents Ex. D, pp. 4-5).[4]   Thereafter, petitioner sought *certiorari* in the Alabama Supreme

Court, which denied the petition on September 14, 2007.  Petitioner then filed the instant *habeas*

*corpus* petition on July 3, 2008.[5]

---

[4]        Although the state appellate court acknowledged that the trial court "summarily" dismissed the amended Rule 32 petition without a hearing, it is unclear how the appellate court believed petitioner had the opportunity and failed to "prov[e] by a preponderance of the evidence" the facts underlying his claims.  It is one thing to conclude that the pleading was insufficient to warrant a hearing, but is it something else to say a petitioner failed to "prove" a set of facts when he was never given a hearing in which to do so.

[5]        Respondents concede that the petition was timely filed, and the court's own calculation of the one-year limitation period under 28 U.S.C. § 2244(d) indicates that the filing was timely.

Allegations In the Instant Petition

Although alleged in two broad categories of ineffective assistance of counsel at trial and ineffective assistance of counsel at sentencing, the petition specifically identifies what appear to be thirty-one separate instances of ineffective assistance. Numbered as they are in the petition, the claims alleged are as follows:

Claim A-1 — Trial counsel failed to conduct an adequate pretrial investigation, which would have revealed that petitioner had not been evicted from his residence, but was living in Huntsville; that he worked in Huntsville; that his telephone number was not that indicated by the victim's caller ID; that he did not own a white Taurus automobile; and that he did not live on Maple Avenue in Florence, Alabama.

Claim A-2 — Trial counsel failed to investigate potential defense witnesses, including the manager of the Executive Lodge apartments (to establish that petitioner resided there), the records of Bell South Telephone (to establish that the phone number on the victim's caller ID was not his); and Ford Motor Credit records (to establish that the white Ford Taurus had been repossessed by Ford months before the robbery).

Claim A-3 — Trial counsel failed to adequately investigate prosecution witnesses, which would have revealed that Duke was a convicted drug dealer and informant for the Colbert County Drug Task Force; that Charles Aday failed to report as stolen the gun allegedly used by Pride in the robbery; and that the gun actually belonged to the victim, Duke.

Claim B — Trial counsel failed to consult with petitioner during jury *voir dire*, when petitioner could have alerted counsel to the fact that one of the proposed jurors (who ended up on the jury) looked familiar to him.

Claim C — Trial counsel failed to object to witness Michael's hearsay testimony about the fact of the robbery.

Claim D — Trial counsel failed to object to witness Jamie Brown's hearsay testimony about the fact of the robbery.

Claim E — Trial counsel failed to cross examine witness Brown about Duke's drug use, cooperation with the police, and ownership of the gun used in the robbery.

Claim F — Trial counsel failed to object to witness Glover's testimony that he, as well as Duke, was robbed, thus introducing collateral crimes to his prejudice.

Claim G — Trial counsel failed to object to the prosecution's leading of Glover.

Claim H — Trial counsel failed to object to witness Glover's hearsay testimony about petitioner making the phone call answered by Duke and causing a telephone number to be on Duke's caller ID.

Claim I — Trial counsel failed to cross examine witness Glover about Duke's drug use, cooperation with police, and gun ownership.

Claim J — Trial counsel failed to object to the prosecution's leading of witness Duke.

Claim K — Trial counsel failed to object to the prosecution's bolstering of the credibility of Duke through character evidence.

Claim L — Trial counsel failed to cross-examine witness Duke about being a police informant.

Claim M — Trial counsel failed to object to the testimony of witness Simon Patel as irrelevant and unduly prejudicial.

Claim N — Trial counsel failed to object to the testimony of witness Simon Patel as hearsay.

Claim O — Trial counsel failed to object to testimony of witness Simon Patel concerning the motel registration card as lacking authenticity and being in violation of the Confrontation Clause.

Claim P — Trial counsel failed to object to the introduction of a CD copy of the telephone conversation recorded by Detective Ray as a "wiretap" in violation of the Fourth Amendment.

Claim Q — Trial counsel failed to object to introduction of a CD copy of the recorded telephone conversation as a violation of the Electronic Communications Privacy Act.

Claim R — Trial counsel failed to object to introduction of a CD copy of the recorded telephone conversation as a violation of the Fourth and Fourteenth Amendments and federal "wiretap" statutes.

Claim S — Trial counsel failed to object to introduction of a CD copy of the recorded telephone conversation on the basis that the prosecution failed to establish an adequate predicate and because the CD copy did not preserve the entire recorded conversation.

Claim T — Trial counsel failed to conduct an adequate pretrial investigation and an investigation of potentially favorable defense witnesses.

Claim U — Trial counsel failed to object to introduction of a CD copy of the recorded telephone conversation on the basis of hearsay.

Claim V — Trial counsel failed to object to Detective Ray giving perjured testimony concerning the telephone call made by another policeman to the telephone number retrieved from Duke's caller ID and petitioner's ownership of a white Taurus automobile.

Claim W — Trial counsel failed to object to such prosecutorial misconduct as asking leading questions, using improper evidence, and bolstering its own witnesses.

Claim X — Trial counsel failed to conduct an adequate pretrial investigation of prosecution witnesses.

Claim Y — Trial counsel failed to object to an improper "reasonable doubt" instruction that operated as a burden-shifting instruction.

Claim Z — Trial counsel failed to object to the court's failure to instruct the jury on every element of the offense of first degree robbery.

Claim Z-1 — Trial counsel failed to object to an improper charge on "intent" that tended to shift the burden of proof to the petitioner.

Claim Z-2 — Trial counsel acted under an actual conflict of interest because she is petitioner's niece.

Claim 2 — Sentencing counsel were ineffective because they failed to adequately investigate the facts of his case, admitted in a prior motion in *limine* that petitioner had two previous felony convictions, asked the court to grant an illegal "split" sentence, and advocated a position contrary to petitioner's interest that arguing that he was entitled to a life sentence.[6]

---

[6]     Respondents read part of this claim as asserting a claim for vindictive sentencing. The court does not read the claim in that manner. Rather, the petitioner seems to be arguing that his attorneys at sentencing rendered ineffective assistance. In any event, if petitioner does intend to

<u>Procedural Default</u>

Respondents admit that all of the claims of ineffective assistance alleged here were raised by petitioner in the Rule 32 petition, which was denied summarily by the trial court. On appeal the Alabama Court of Criminal Appeals affirmed the denial of Rule 32 relief, holding that these claims were procedurally defaulted because they were not pleaded with sufficient specificity under Rule 32.6(b) of the Alabama Rules of Criminal Procedure. Respondents argue here that the claims are procedurally defaulted for this same reason.

Although this court has recognized the "specificity requirement" of Rule 32.6(b) as an adequate basis for procedural default in the past, it also has expressed concern that the requirement can be abused. Rule 32.6(b) states:

> The petition must contain a clear and specific statement of the grounds upon which relief is sought, including *full disclosure of the factual basis of the grounds*. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings. [Italics added].

The requirement that the pleading petitioner make a "full disclosure of the factual basis of the grounds [for relief]" serves the purpose of allowing the reviewing court to determine from the petition alone whether there is a potential for relief if the specifically pleaded facts are actually supported by evidence. Although the petitioner is not required to *prove* his right to relief in the petition itself, he is required to *allege* the specific facts that, if proven at a later hearing, support post-conviction relief from the conviction or sentence.

---

allege vindictive sentencing, that claim is clearly defaulted, as it was never raised on direct appeal.

To serve as a basis for procedural default in a subsequent federal *habeas* action, the state procedural rule must be both "independent" of federal law and "adequate." Whether a state rule meets these requirements is a question of federal law, determined by the federal *habeas* court. See Lee v. Kemna, 534 U.S. 362, 375 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). The adequacy prong assesses whether the rule is "firmly established" and regularly applied. See Cone v Bell, ___ U.S. ___, 129 S. Ct. 1769, 173 L. Ed. 2d 701 (2009); see also Doorbal v. Department of Corrections, 572 F.3d 1222 (11th Cir. 2009). In practical terms, the "adequacy" of a rule measures whether it has been arbitrarily applied, or applied in an unprecedented or manifestly unfair manner. Doorbal v. Department of Corrections, 572 F.3d 1222, 1227 (11th Cir. 2009) (citing Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001) (quoting Card v. Dugger, 911 F.2d 1494 (11th Cir. 1990))). A generally valid state procedural rule can be applied "exorbitantly" in a manner that makes that particular application inadequate to serve as a procedural bar to federal review. As the Supreme Court explained in Lee v Kemna, 534 U.S. 362, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002):

> Ordinarily, violation of "firmly established and regularly followed" state rules ...will be adequate to foreclose review of a federal claim. James v. Kentucky, 466 U.S. 341, 348, 104 S. Ct. 1830, 80 L. Ed. 2d 346 (1984); see Ford v. Georgia, 498 U.S. 411, 422-24, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991). There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question. See Davis v. Wechsler, 263 U.S. 22, 24, 44 S. Ct. 13, 68 L. Ed. 143 (1923) (Holmes, J.) ("Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice.").

Id. at 376, 122 S. Ct. at 885-86. The Court reasoned that, because the doctrine of procedural default is rooted in notions of federalism respecting legitimate state interests, rules that do not serve any

legitimate state interests are not due to be respected by federal courts.  Further, quoting <u>Osborne v.</u>

<u>Ohio</u>, 495 U.S. 103, 110 S. Ct. 1691, 109 L. Ed. 2d 98 (1990), the Court noted, "the general principle

that an objection which is ample and timely to bring the alleged federal error to the attention of the

trial court and enable it to take appropriate corrective action is sufficient to serve legitimate state

interests, and therefore sufficient to preserve the claim for review here." <u>Id.</u> at 377, 122 S. Ct. at 886

(quoting <u>Osborne v. Ohio</u>, 495 U.S. 103, 125, 110 S. Ct. 1691, 109 L. Ed. 2d 98 (1990)).

In the case now before it, this court has profound concerns whether the application of the

specificity requirement of Rule 32.6(b) to the Rule 32 petition filed in this case amounts to an

"exorbitant application" of the generally sound rule.  The stated purpose of the specificity

requirement is to require Rule 32 petitioners to state sufficient facts which, if proven true at a

hearing, would entitle the petitioner to relief.  This enables the Rule 32 court to quickly and

efficiently weed out petitions lacking any real factual potential for success.  At the same time, most

Rule 32 petitions are filed by *pro se* prisoners, and some flexibility must be allowed to take that fact

into account to avoid unfairly dismissing petitions with true factual potential, but which are poorly

or awkwardly drafted.  Application of the specificity requirement to such a petition may well be an

"exorbitant application" of the rule that is "manifestly unfair."

The amended Rule 32 petition filed by Pride, as allowed by the state trial court, was over 390

typed pages in length, and it is supported by about 165 pages of exhibits.  (<u>See</u> Respondents' Ex. C,

Supp. Vol. I, p. 17 through Supp. Vol. III, p. 605).  The particular allegations for each instance of

alleged ineffective assistance of counsel were multiple pages.  Although it is true that much of this

length was spent in legal argument, it is indisputable that petitioner also set forth very specific

factual allegations about errors made by trial counsel and the impact those errors might have had on

the outcome of his trial.  In many instances, he quotes from the trial transcript to illustrate what he believes are shortcomings by counsel due to counsel's alleged failure to investigate the facts and witnesses involved.  It is simply difficult to understand how a court could believe these claims are not pleaded with sufficient specificity.  For the reasons explained below, all of these claims are meritless under Strickland v. Washington, 466 U.S. 668,  104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); however, that does not mean that they are insufficiently pleaded.  There is a clear distinction between adjudicating a claim on its merits and dismissing it as procedurally barred from consideration at all, and the specificity requirement addresses the latter procedural ground for dismissal.

The court does not believe, therefore, the invocation of Rule 32.6(b) in this case is an "adequate" basis for finding petitioner's claims to be procedurally defaulted.  This *pro se* petitioner offered more than reasonable factual specificity as to each of his claims of ineffective assistance of counsel.  In light of the detailed and extensive factual pleading by petitioner, reliance on the specificity requirement in Rule 32.6(b) is manifestly unfair and an exorbitant application of an otherwise sound rule.  The procedural ground used by the state appellate court, therefore, is not adequate under federal law to establish a procedural default, and the court will review the claims of ineffective assistance on their merits.

<u>Merits of Claims</u>

The Supreme Court has established a two-pronged standard for judging, under the Sixth Amendment, the effectiveness of attorneys who represent criminal defendants at trial or on direct appeal.  In Strickland v. Washington, 466 U.S. 668 (1984), the Court explained:

Page 11 of 35

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. *First*, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Second*, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id*. at 687 (emphasis supplied); *see also* Williams v. Taylor, 529 U.S. 362, 390 (2000) (same). The two parts of the Strickland standard are conjunctive, and a petitioner accordingly bears the burden of proving *both* "deficient performance" *and* "prejudice" by "a preponderance of competent evidence." Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*). Thus, a court is not required to address both aspects of the *Strickland* standard when a *habeas* petitioner makes an insufficient showing on either one of the two prongs. See, e.g., Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

To establish that counsel's performance was deficient, a defendant "must show that counsel's representation fell below an objective standard of reasonableness": a rule that is defined in terms of "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688; see also Williams, 529 U.S. at 390-91 (same); Darden v. Wainwright, 477 U.S. 168, 184 (1986) (same). The Strickland court instructed lower federal courts to be "highly deferential" when engaging in such

assessments, and to "indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." The Court explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, *a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance*; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

Strickland, 466 U.S. at 689 (emphasis supplied) (citations and internal quotation marks omitted); see also, *e.g*, Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994) (holding that, "[w]hen reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate") (internal quotation marks omitted)). To overcome the presumption that counsel's conduct fell within the wide range of reasonable professional assistance, the *habeas* petitioner "must establish that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*) (footnote and citation omitted).

The reasonableness of counsel's performance is judged from the perspective of the attorney at the time of the alleged error and in light of all the circumstances then existing. See, e.g., Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001) (giving lawyers "the benefit of the doubt for 'heat

of the battle' tactical decisions"); Mills v. Singletary, 161 F.3d 1273, 1285-86 (11th Cir. 1998)

(noting that Strickland performance review is a "deferential review of all of the circumstances from

the perspective of counsel at the time of the alleged errors").  The rationale underlying the deferential

standard recognizes the unpredictable circumstances counsel face.  One court has said:

> Under this standard, there are no "absolute rules" dictating what reasonable
> performance is or what line of defense must be asserted. [Chandler, 218 F.3d] at
> 1317.  Indeed, as we have recognized, "[a]bsolute rules would interfere with
> counsel's independence — which is also constitutionally protected — and would
> restrict the wide latitude counsel have in making tactical decisions."  Putman v.
> Head, 268 F.3d 1223, 1244 (11th Cir. 2001).

Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005).  "Even if many reasonable lawyers would

not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds

unless it is shown that *no* reasonable lawyer, in the circumstances, would have done so."  Rogers v.

Zant, 13 F.3d 384, 386 (11th Cir. 1994) (emphasis supplied).  The fact that an attorney's strategic

or tactical decision failed does not itself prove that the decision amounts to ineffectiveness.

   In addition to showing deficient performance by counsel, a petitioner must show prejudice.

To satisfy the prejudice prong, a *habeas* petitioner "must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the results of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome."

Strickland, 466 U.S. at 694; see also Williams, 529 U.S. at 391 (same).  Stated somewhat differently,

"[a] finding of prejudice requires proof of unprofessional errors so egregious that the trial was

rendered unfair and the verdict rendered suspect."  Johnson v. Alabama, 256 F.3d 1156, 1177 (11th

Cir. 2001) (quoting Eddmonds v. Peters, 93 F.3d 1307, 1313 (7th Cir. 1996) (in turn quoting

Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) (internal quotation marks omitted)); see also Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (holding that, to show prejudice, "a defendant must show that counsel's errors were so serious that they rendered the defendant's trial unfair or unreliable, not merely that the outcome would have been different").

A *habeas* petitioner "must affirmatively prove prejudice, because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.'" Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000) (quoting Strickland, 466 U.S. at 693). The fact that counsel's error may have "had some conceivable effect on the outcome of the proceeding" is not sufficient to show prejudice. Strickland, 466 U.S. at 693; see also Gilreath, 234 F.3d at 551 (same); Tompkins v. Moore, 193 F.3d 1327, 1336 (11th Cir. 1999) (same). Instead, a petitioner must present competent evidence proving "that trial counsel's deficient performance deprived him of 'a trial whose result is reliable.'" Brown v. Jones, 255 F.3d 1272, 1278 (11th Cir. 2001) (quoting Strickland, 466 U.S. at 687). In summary, "[t]he benchmark for judging any claims of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [or subsequent direct appeal] cannot be relied upon as having produced a just result." Strickland, 466 U.S. at 686.

### I.  Inadequate Investigation Claims

At claims A-1, A-2, A-3, T, and X, petitioner alleges that his trial attorney failed to conduct an adequate pretrial investigation, causing her to be unprepared to defend him at trial. In these claims, he contends that counsel failed to uncover certain facts and locate certain witnesses that tended to contradict evidence offered by the prosecution, such as (1) that he had not been evicted

from his residence (as Duke and Glover testified petitioner told them), (2) that he was working in Huntsville, (3) that the number on the victim's caller ID was not his telephone number, (4) that he did not own a white Taurus automobile (as reflected on the motel registration card), and (5) that he did not live on Maple Avenue in Florence (as reflected on the motel registration card). He argues that had counsel conducted an adequate pretrial investigation she would have located the manager of the apartments where he lived in Huntsville, would have subpoenaed telephone company records to show that the telephone number on the victim's caller ID belonged to someone else, and would have subpoenaed Ford Motor Company records to show that his white Taurus had been repossessed months before the robbery. Finally, he also contends that an adequate pretrial investigation would have revealed that the victim, Duke, was a convicted drug dealer[7] and a police informant, that Charles Aday failed to report his gun had been stolen and, in fact, the gun belonged to the victim himself.

The assessment of these claims necessarily must be done against the backdrop of the evidence offered at trial. This is a case where the victim and another witness, both of whom knew the petitioner, directly and unequivocally testified that petitioner pulled a gun and robbed Duke. Other witnesses confirmed that petitioner had been in the Duke home earlier that evening, even if they themselves did not see the robbery. The court is simply unpersuaded that the particular factual issues petitioner points to now would have made any difference in the outcome of the trial. Whether he was living and working in Huntsville does not undermine the testimony directly identifying him as the robber. Petitioner admits that, on weekends and other occasions, he returned to Florence (just

---

[7]    Petitioner seems to argue now that Duke framed the petitioner as part of a drug deal gone bad. He contends that he owed Duke money for drugs he bought from Duke, and that Duke falsified the evidence of a robbery to get money from petitioner or to exact revenge.

across the Tennessee River from Sheffield) to visit family.  He admits that the Maple Avenue address on the motel registration card was his mother's home.  The issue faced by counsel was not where the petitioner lived at the time of the robbery, but how to undermine or refute the direct-identification evidence.  While evidence about Duke's drug convictions and cooperation with police touches on his credibility, an affidavit filed by petitioner's trial lawyer during the Rule 32 proceedings establishes that she, in fact, was aware of Duke's convictions and his work as an informant.  (Respondents' Ex. C, p. 97).  Further, the fact of Duke's felony conviction was brought out by the prosecution on direct examination of Duke.  (Respondents' Ex. C, p. 516).  Thus, regardless of counsel's cross-examination, the basic fact was put before the jury and was argued in closing statements.  Petitioner was not prejudiced by this alleged shortcoming by counsel.

Much of the same is true with respect to the motel registration card.  Although the card had the effect of confirming petitioner's whereabouts on the night of the robbery, quibbling with some of the information on the card (e.g., ownership of a white Taurus) simply would not have undermined the evidentiary value of the card.  It is beyond coincidence that a motel registration card in the name of "June Pride," also bore his mother's actual address and a driver's license number within two digits of his own.  It strains credulity to believe — apparently as the petitioner would have the court believe — that Duke framed him for a non-existent robbery, lied to police about a phone number on his caller ID that petitioner says was not his, and then had a motel registration card fabricated by the motel owner, Patel, to further bolster the tale.  It was not unreasonable for counsel to focus on other issues, rather than spend time and money on trying to show errors on the motel registration card.  Further, even if counsel had shown that petitioner did not then own a white Taurus and did not live on Maple Avenue with his mother, the failure to do so does not undermine

confidence in the trial and its outcome.  In short, claims A-1, A-2, and A-3 are meritless and due to be denied.

## II.  Jury Voir Dire

Petitioner next argues that his attorney was ineffective because she failed to consult with him during jury *voir dire* because, if she had, he would have been able to point out to her that a juror looked familiar to petitioner.  Petitioner concedes that it was later, only after the jury was selected, that it came to him who the familiar-looking juror was.  He would not have been able during the actual *voir dire* to articulate to counsel, had she asked, whether the juror's presence was good or bad for his case.[8]  In any event, there is no evidence that the juror recognized petitioner.  While it may be true that counsel could have exercised a peremptory strike to remove the juror, this alone does not undermine confidence in the outcome of the trial.  Petitioner has not alleged any facts from which it can be inferred that the juror was hostile to him, or that he even recognized petitioner.  Absent some evidence that the juror's presence on the jury might have operated to petitioner's prejudice, no ineffectiveness has been shown.

## III.  Failure To Make Various Evidentiary Objections

At claims C, D, F, G, H, J, K, M, N, O, P, Q, R, S, U, V, and W, petitioner alleges that his trial attorney was ineffective because she failed to make various evidentiary objections.  Having carefully reviewed each of these, the court cannot say that counsel's failure to object was either

---

[8]     Jurors who know a defendant are not necessarily a bad thing for a defendant.  The court cannot presume, simply from the fact that the juror looked familiar to petitioner, that this would have resulted in the exercise of a strike against the juror.

professionally unreasonable or resulted in prejudice to the defense that undermines confidence in the trial and its outcome.  The court briefly summarizes each.

Claim C — Petitioner alleges counsel should have objected to hearsay testimony by witness James Tyler Michael.  Michael testified that, after spending part of an evening at Duke's home and seeing petitioner there, he left and later "heard" that a robbery occurred after he left.  The purpose of the testimony was simply to establish a time frame for when Michael was present at the Duke home, not to prove the truth of the assertion that a robbery occurred.  It was not hearsay, and even if it were, the failure to object to it was not prejudicial in light of the subject direct-identification testimony by Duke and Glover.  This claim has no merit.

Claim D — Petitioner argues that counsel was ineffective because she did not object to the hearsay testimony of Jamie Brown.  Brown testified that she was Duke's live-in fiancee, and that the two of them had just received a large income tax refund.  She testified that petitioner was at the Duke home earlier in the evening.  Later, after she went to bed, she was awakened by Duke, who told her that he had been robbed by petitioner.  While this might have been hearsay, it was harmless and non-prejudicial in light of the subsequent direct, eye-witness testimony of Duke and Glover.  Counsel's failure to object was neither professionally unreasonable nor prejudicial.  This claim has no merit.

Claim F — Petitioner contends that counsel was ineffective because she failed to object to Glover's testimony that he was robbed, as well as Duke, thus injecting a collateral crime into the trial.  Although Glover did, indeed, use the phrase that he was robbed, his testimony makes clear that he was frightened by petitioner pointing the gun at him and Duke, even though only Duke surrendered anything of value.  This is certainly not a "collateral crime," but one occurring at the

same time as the robbery of Duke.  Counsel's failure to object to this specific testimony was neither professionally unreasonable nor prejudicial.  This claim is meritless.

Claim G — Petitioner alleges that counsel was ineffective because she failed to object to the prosecution's leading questions to Glover.  The court has examined Glover's testimony, and the leading questions were harmless.  Counsel's failure to object to leading Glover was neither professionally unreasonable nor prejudicial.  This claim has no merit.

Claim H— Petitioner asserts that counsel was ineffective because she failed to object to hearsay testimony by Glover concerning the identity of a telephone caller to the Duke's home.  Glover testified that, while he, Duke, and others were watching television in the Duke home, Duke received a telephone call, which Duke later said was from petitioner.[9]  Although it is true that Glover's only knowledge concerning the identity of the caller came from Duke's out-of-court statement, this hearsay was harmless and non-prejudicial.  Duke himself testified about the identity of the caller, so Glover's was not the only testimony seeking to establish that fact.  Counsel's failure to object to Glover's testimony on this point did not prejudice the defense to the point that confidence in the trial and its outcome is undermined.  This claim is without merit.

Claim J — Petitioner argues that counsel was ineffective because she failed to object to the prosecution's leading questions to Duke.  The court has examined Duke's testimony, and the leading questions were harmless.  Counsel's failure to object to leading Duke was neither professionally unreasonable nor prejudicial.  This claim has no merit.

Claim K— Petitioner claims that counsel was ineffective for failing to object to the prosecution bolstering the credibility of Duke with character evidence.  The court has reviewed the

---

[9]     The number from this call was the one Duke later showed police on his caller ID.

exhibits linked to this allegation in the petition and simply cannot find an instance of the prosecution offering character evidence to bolster the credibility of Duke.  The portions of the transcript referred to by petitioner simply involved questions about the people present in the home during the evening of the robbery and their relationships to each other.  There is no improper bolster, and thus the failure to object was not professionally unreasonable.  This claim has no merit.

Claims M, N, and O — Petitioner contends that counsel was ineffective for failing to object to the testimony of witness Simon Patel as irrelevant, prejudicial, and hearsay.  Further, he contends that the admission into evidence of the motel registration card was objectionable because the card was not properly authenticated and it violated the Confrontation Clause.  Patel, as the owner of the motel, testified about a motel registration card in the name of June Pride for the night of the robbery.  His testimony consisted of identifying the card and describing the procedures for the registration of motel guests.  Patel admitted that he was not present when this card was filled out and that he could not identify the motel guest that filled it out.

Patel's testimony was not irrelevant.  As the owner of the motel, he was the custodian of the registration card, which constituted a business record, so his testimony was proper to authenticate the card as a business record, which is an exception to the hearsay rule.  See Rule 803(6), *Alabama Rules of Evidence*.  His testimony was proper and sufficient to authenticate the card, and, once authenticated, it fit the business record exception to the hearsay rule.  There was no objection to make, and counsel's failure to object on relevancy and hearsay grounds was not professionally unreasonable.

Further, the admission of the card did not violate the Confrontation Clause because the card, as an exhibit, was not testimonial, but demonstrative.  The Confrontation Clause assures every

criminal defendant the right to "confront" and cross-examine the "witnesses against him."  The

Supreme Court recently applied its Confrontation Clause jurisprudence in the case of Melendez-Diaz

v. Massachusetts, ___ U.S. ___, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (June 25, 2009).  There, the Court

explained that certain types of "statements" are "testimonial" in nature, in the sense that the statement

is merely a written version of testimony that can be given by a human witness.  The Court explained:

> The Sixth Amendment to the United States Constitution, made applicable to the States
> via the Fourteenth Amendment, Pointer v. Texas, 380 U.S. 400, 403, 85 S. Ct. 1065,
> 13 L. Ed. 2d 923 (1965), provides that "[i]n all criminal prosecutions, the accused
> shall enjoy the right ... to be confronted with the witnesses against him."  In Crawford
> [v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)], after
> reviewing the Clause's historical underpinnings, we held that it guarantees a
> defendant's right to confront those "who 'bear testimony'" against him.  541 U.S., at
> 51, 124 S. Ct. 1354.  A witness's testimony against a defendant is thus inadmissible
> unless the witness appears at trial or, if the witness is unavailable, the defendant had
> a prior opportunity for cross-examination.  Id., at 54, 124 S. Ct. 1354.

> Our opinion described the class of testimonial statements covered by the
> Confrontation Clause as follows:

>> Various formulations of this core class of testimonial statements exist:
>> *ex parte* in-court testimony or its functional equivalent — that is,
>> material such as affidavits, custodial examinations, prior testimony
>> that the defendant was unable to cross-examine, or similar pretrial
>> statements that declarants would reasonably expect to be used
>> prosecutorially; extrajudicial statements ... contained in formalized
>> testimonial materials, such as affidavits, depositions, prior testimony,
>> or confessions; statements that were made under circumstances which
>> would lead an objective witness reasonably to believe that the
>> statement would be available for use at a later trial." Id., at 51-52, 124
>> S. Ct. 1354 (internal quotation marks and citations omitted).

Id. at ___, 129 S. Ct. at 2531.  Plainly, this description of the class of "testimonial statements" does

not include the motel registration card at issue here.  The card itself constituted a fact, evidence that

someone purporting to be "June Pride," with an address on Maple Avenue in Florence, rented a motel room the night of the robbery.  The evidentiary importance of the card was its very existence, not the truth of the information contained on it.  It was a demonstrative exhibit, demonstrative of the fact that a "June Pride" rented a particular motel room on a particular night.  Cf. United States v. Lamons, 32 F.3d 1251 (11th Cir. 2008)(data compilations made by a computer are not testimonial); United States v. Alexander, 237 Fed. Appx. 399, 405 (11th Cir. 2007) (statements made to an undercover agent are not "testimonial" because they "were not made under circumstances which would have led [the declarant] to believe that his statement would be available for use at a later trial.")(quoting United States v. Underwood, 446 F.3d 1340, 1347 (11th Cir.), cert. denied, 549 U.S. 903, 127 S. Ct. 225, 166 L. Ed. 2d 179 (2006)).  The Confrontation Clause applies only to *testimonial* evidence.  Davis v. Washington, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).  The information on the card was not testimony by a witness against the defendant; if anything, it was his own admission.  Thus, because there was no Confrontation Clause objection to make, counsel's failure to do so was not professionally unreasonable, nor did it cause prejudice to the defendant.  There is no merit to these claims.

    Claims P, Q, R, S, and U — In each of these claims, petitioner alleges ineffective assistance of counsel on the basis that she failed to assert various objections to the introduction of a compact disc ("CD") of a recording of a telephone conversation between Detective Ray and a person identified as petitioner.  Petitioner argues that the recording of the conversation was inadmissible and counsel was ineffective because she failed to object on the basis that it was an illegal "wiretap" obtained in violation of the Fourth Amendment and the Electronic Communications Privacy Act.  Additionally, he contends that counsel should have objected on the basis that the CD did not preserve

the entire "tape" recording of the conversation and because it was hearsay.  All of these arguments are without merit.

Detective Ray testified that, the morning after the robbery, another detective placed a telephone call to the telephone number shown on the victim Duke's caller ID and which purported to be the number from which petitioner called Duke the night of the robbery.  Although the call to the number did not reach anyone, and it is unclear whether the detective left a voice message or a call-back number, Detective Ray received a telephone call later that afternoon from a person identifying himself as June Pride.  The police caller ID indicated that the call was from a "private" number, which did not show the number and area code from which the call was made.  Detective Ray secretly recorded the conversation.  During the telephone conversation, the caller told Detective Ray that he was in Cleveland, Ohio, that he had been there about three weeks, and that he could not have been involved in the robbery the night before.  Detective Ray told the caller that, because the caller ID on his phone showed the call to be "private," he should go to another phone and call Detective Ray on a phone that would show that the call was originating in Cleveland, Ohio.  Although the caller agreed, he never called back.  Duke later listened to the recorded conversation and identified the voice as that of petitioner, whom he knew.  At trial, counsel objected to the introduction of the CD copy of the recording on the ground that Duke was not familiar enough with petitioner's voice to be able to credibly identify it.  That objection was overruled.

Petitioner contends that counsel should have made other objections to the introduction of the recording.  Having reviewed the portion of the trial transcript where the recording was offered and admitted, the court is unpersuaded that counsel had any other objections to make.  First, Detective Ray testified to the circumstances under which the recording was made, and that he made the CD

copy of the recording from the police department's tape-recording system.  He testified that the CD

copy was an accurate copy of the conversation he had with the caller.  (Respondents' Ex. C., Trial

Transcript pp. 137-147).  Thus, plainly, the proper foundation was laid for introduction of the CD and

the recording it contained.  There was no objection to be made on this ground.

Next, the recording of the conversation violated neither the Fourth Amendment nor the

Electronic Communications Privacy Act.  To have standing to raise a Fourth Amendment challenge

to the recording, petitioner would have to admit that it was he who made the call.  As counsel argued

there was an insufficient basis for believing that the call was made by petitioner, such an admission

would have contradicted counsel's strategy for keeping the recording out of evidence.  Also, as a

participant in the conversation, it was not a violation of federal statutes for Detective Ray to record

the conversation surreptitiously.  Petitioner overlooks 18 U.S.C. § 2511(2)(c), which clearly provides

that "It shall not be unlawful under this chapter for a person acting under color of law to intercept a

wire or oral communication, where such person is a party to the communication or one of the parties

to the communication has given prior consent to such interception."  See also United States v.

Mendoza, 574 F.2d 1373 (5th Cir. 1978).[10]  Detective Ray's recording of his own conversation with

the caller was not a "wiretap" or a violation of any federal statute, and counsel's failure to make this

objection was not professionally unreasonable.

Finally, it is also clear that there was no hearsay objection counsel could have made to

introduction of the recording.  It was established that the caller was the defendant, so that the

---

[10]     In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the
Eleventh Circuit adopted as binding precedent the decisions of the old Fifth Circuit Court of Appeals
rendered before October 1, 1981.

statements made during the conversation were defendant's own admissions, not hearsay. These claims are meritless.

Claim V — Petitioner argues that his attorney was ineffective at trial because she failed to object to Detective Ray giving perjured testimony. He contends that Detective Ray testified falsely concerning the phone call made by another detective to the telephone number identified by Duke as that belonging to petitioner and about petitioner's ownership of a white Taurus. The court has examined the trial transcript excerpts relating to this testimony and finds there is no colorable claim of perjury. Detective Ray testified about Detective Randy Butler calling the number identified by Duke as belonging to the petitioner. He did not testify that he knew the number belonged to petitioner, only that it was the number given to him by Duke, the victim. Likewise, he did not testify that petitioner owned a white Taurus, only that that information was on the motel registration card. There simply is nothing in Detective Ray's testimony that raises the faintest glimmer of perjury, and counsel's failure to articulate such an objection was not professionally unreasonable or prejudicial to petitioner's rights.

Claim W — Petitioner reiterates much of his argument relating to the preceding claims by arguing that counsel was ineffective because she did not object to the prosecution leading its witnesses, bolstering their credibility, and introducing improper evidence. To the extent this claim identifies particular evidentiary issues, they are the same issues discussed with respect to the preceding claims. The court will not repeat the analysis for rejecting each of these claims, and this claim also is meritless.

*IV. Failure To Cross-Examine Witnesses Adequately*

In claims E, I, and L, petitioner argues that his attorney rendered ineffective assistance of counsel by failing to adequately cross-examine certain prosecution witnesses. For example, he contends that counsel failed to cross-examine Jamie Brown about Duke's drug use, cooperation with police, and ownership of the gun used in the robbery (Claim E). He complains similarly about the cross-examination of Shawn Glover (Claim I), and the failure of counsel to cross-examine Duke about being a police informant (Claim L). Even if true, none of these subjects for cross-examination indicate a professionally unreasonable failure by counsel. First, it must be noted that Duke's conviction and prison sentence for felony drug possession were brought out on direct examination by the prosecution. (See Respondents' Ex. C, pp. 516-517). Thus, insofar as the conviction bore on his credibility, the jury heard it regardless of whether defense counsel cross-examined any witness about it. Further, a reasonable defense attorney might choose not to ask about Duke's cooperation with police and his work as an informant as it might be reasonably feared that such would tend to bolster his credibility to the jury. The decision not to go into this subject is an objectively reasonable tactical decision. Likewise, a reasonable defense attorney might choose not to ask any questions about the ownership of the gun for fear of simply emphasizing its use by petitioner in the robbery. A reasonable lawyer could well decide that the less said about the gun, the better.

The court simply is not persuaded that counsel's failure to cross-examine these witnesses on these subjects was professionally unreasonable or prejudicial to petitioner. These claims lack merit and are due to be denied.

*V. Failure To Object To Jury Instructions*

At claims Y, Z, and Z-1, petitioner contends that his attorney was constitutionally ineffective because she failed to object to certain jury instructions given by the trial court.  He alleges that counsel failed to object to an improper "reasonable doubt" instruction and an improper "intent" instruction, both of which, he says, tended to shift the burden of proof to him.  Also, he argues that counsel should have objected to the court's failure to instruct the jury on *every* element of first-degree robbery.  These claims also are meritless.

The court's "reasonable doubt" instruction reads in part as follows:

> The Defendant has, on the reading of the indictment, entered a plea of not guilty as to the charges.  The Defendant says that he is not guilty of any charges contained in the indictment.  In coming before you, a jury of his peers, and upon his plea of not guilty, the Defendant is presumed to be innocent of the charges against him.
>
> This presumption remains with him throughout every stage in the trial and during your deliberations on the verdict and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the Defendant is not guilty.  This presumption of innocence with which the Defendant enters into the trial is a fact in the case which must be considered with all the evidence and is not to be disregarded by you.
>
> The State of Alabama has the burden of proving the guilt of the Defendant beyond a reasonable doubt.  And this burden remains on the State throughout the case.  The Defendant is not required to prove his innocence.
>
> The phrase "reasonable doubt" is self explanatory.  And efforts to define it do not always clarify the term.  But it may help you some to say that the doubt which would justify an acquittal must be a reasonable doubt and not a mere guess or surmise.  And it is not a forced or capricious doubt.
>
> If after considering all of the evidence in this case you have an abiding conviction of the truth of the charge, then you are convinced beyond a reasonable doubt.  And it would be your duty to convict the Defendant.  The reasonable doubt which entitled an accused an acquittal is not a mere fanciful, vague, conjectural, or speculative doubt but a reasonable doubt arising from the evidence and remaining after a careful consideration of the testimony such as reasonable, fair-minded and conscientious men and women would entertain under all the circumstances.

You will observe that the State is not required to convince you of the Defendant's guilt beyond all doubt but simply beyond all reasonable doubt. After comparing and considering all the evidence in this case your minds are left in such condition that you could ....[11]

Although the court is not favored with the entire trial transcript or the entire portion containing the court's jury instruction, enough of it is provided to convince the court that counsel's failure to object to the "reasonable doubt" instruction was not professionally unreasonable or prejudicial. Nothing about the wording of the instruction shifted the burden of the proof to the petitioner; indeed, the court repeatedly stressed that the petitioner was presumed innocent and that the burden of proof always remained on the prosecution. This instruction used none of the terms found troubling in Cage v. Louisiana, 498 U.S. 39, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990). Cf. Walker v. Jones, 10 F.3d 1569 (11th Cir. 1994). Viewing the instruction as a whole, it is clear that counsel reasonably concluded that  the instruction was not objectionable. This decision was not professionally unreasonable or prejudicial.

Likewise, the trial court's "intent" instruction was not defective and did not shift the burden of proof to the petitioner. Citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), petitioner argues that the jury instructions given by the court on the issue of petitioner's intent unconstitutionally shifted the burden of proof to him by creating a presumption that he intended to act in an particular manner. He asserts his attorney should have objected to this instruction. In fact, the trial court's instruction stated:

---

[11]     As only excerpts of the trial transcript have been provided to the court, the remainder of the instruction is not in the record.

> A person acts intentionally with respect to a result or to conduct when his purpose is to cause that result or engage in that conduct.  A person acts knowingly with respect to conduct or to a circumstance when he is aware that his conduct is of that nature or that the circumstance exists.  A deadly weapon includes but is not limited to a pistol or handgun.

(See Respondents' Ex. C, p. 564).  Nothing in that definition of intention created a presumption, mandatory or rebuttable, unlike the intent instruction discussed in Hall v. Kelso, 892 F.2d 1541 (11th Cir. 1990).  The instruction clearly left to the jury the obligation to determine whether, in fact, the petitioner acted with the "purpose to cause [a] result or engage in [certain] conduct," and it did not attach any presumptions.  The intent instruction did not violate Sandstrom or Francis v. Franklin, 471 U.S. 307, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985), and there was no basis for an objection by counsel.   Therefore, counsel's failure to object was neither professionally unreasonable nor prejudicial.

Petitioner also argues that the trial court failed to instruct the jury on *every* element of first-degree robbery, and that counsel was ineffective for not objecting to the insufficiency of the instruction.  In support of this allegation in the Rule 32 petition, petitioner attached only page 208 of the trial transcript, and this is the only portion of the instruction included in the record in this court.  Because this is only an excerpt, it begins and reads as follows:

> ... with intent to compel acquiescence to the taking of money; and that the Defendant was armed with a deadly weapon.
>
> A person commits the crime of theft of property if he knowingly obtains or exerts unauthorized control over the property of another with intent to deprive the owner of his property.  A deadly weapon is a firearm or anything manifestly designed, made, or adopted for the purpose of inflicting death or serious physical injury.
>
> A person acts intentionally with respect to a result or to conduct when his purpose is to cause that result or engage in that conduct.  A person acts knowingly

with respect to conduct or to a circumstance when he is aware that his conduct is of
that nature or that the circumstance exists. A deadly weapon includes but is not
limited to a pistol or handgun.

(See Respondents' Ex. C, p. 564). It is true that the court does not have before it the entire instruction

on first degree robbery, but it has enough of the instruction to be confident that it was not so defective

that no reasonable attorney would have refrained from objecting to it. The essential characteristics

of first-degree robbery is the intentional use of a deadly weapon to "compel acquiescence" to a theft

of property. Those elements of the crime were explained to the jury in the transcript excerpt the court

has before it. The court explained that the defendant had to intend to "compel acquiescence" from

the victim to the commission of a theft of the victim's property, and that he did so by the use of a

deadly weapon. The issue here is whether counsel's failure to object to this instruction was

constitutionally ineffective assistance, and based on the portion of the instruction supplied by

petitioner, the court cannot say that counsel's failure was professionally unreasonable. The

instruction appears to be proper, leaving no objection to make. This claim of ineffective assistance

of counsel is meritless. Claims Y, Z, and Z-1 are due to be denied.

### VI. Conflict Of Interest

In Claim Z-2, petitioner alleges that his attorney, Terrinell Lyons, had a conflict of interest that

interfered with her ability to represent him. The nature of the conflict is not entirely clear, as he

alleges that the conflict arose both from her relationship to him as his niece and because she was

involved in another case that consumed her time. Neither of these allegations shows a genuine

conflict of interest. Nothing in either being the defendant's niece or in having a heavy caseload

necessarily establishes ineffective assistance, absent evidence of a true detrimental effect upon the

petitioner's defense.  Many attorneys have heavy caseloads, and that alone, without showing how the

heavy caseload prevented the attorney from effectively representing the client, does not establish the

requisite prejudice to the defendant.  Likewise, a family relationship between the attorney and a

defendant does not necessarily show that the attorney is incapable of effectively representing the

defendant.  The Eleventh Circuit explained the law of conflicts of interest in Reynolds v. Chapman

253 F.3d 1337 (11th Cir. 2001), saying:

> Ineffective assistance of counsel claims in the conflict of interest context are governed by the standard articulated by the Supreme Court in Cuyler v. Sullivan, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).  Cuyler establishes a two-part test that we use to evaluate whether an attorney is constitutionally ineffective due to a conflict of interest.  To show ineffectiveness under Cuyler, a petitioner must demonstrate: (a) that his defense attorney had an actual conflict of interest, and (b) that this conflict adversely affected the attorney's performance.  See Cuyler, 446 U.S. at 348-49, 100 S. Ct. 1708.
>
> A series of opinions from this court have interpreted and refined the meaning of both prongs of the Cuyler test.  To satisfy the "actual conflict" prong, a defendant must show something more than "a possible, speculative, or merely hypothetical conflict." Lightbourne v. Dugger, 829 F.2d 1012, 1023 (11th Cir. 1987).  In Smith v. White, 815 F.2d 1401 (11th Cir. 1987), we developed a test that enables us to distinguish actual from potential conflicts of interest:
>
>> We will not find an actual conflict of interest unless appellants can point to specific instances in the record to suggest an actual conflict or impairment of their interests.... Appellants must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative causes of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other.  If he did not make such a choice, the conflict remain(s) hypothetical.
>
> Smith, 815 F.2d at 1404.

Id. at 1342-1343.

These circumstances do not prove an actual conflict between the attorney's interests and those of the client, and, thus, there is no presumed prejudice.  Petitioner must still show how he was actually and substantially prejudiced, and he has not done so here.  Consequently, this claim also is meritless.

### VII.  Ineffectiveness Of Sentencing Counsel

Lastly, petitioner contends that he received ineffective assistance of counsel at sentencing because (1) his new sentencing attorney, Billy Underwood, had not investigated his case and was not familiar with it, and (2) counsel asked the court to "split" a life sentence, which could not be done under Alabama law.  Both of these allegations fail to warrant habeas relief.

As with any claim of ineffective assistance, the Strickland test requires the petitioner to identify a professionally unreasonable error or omission by counsel that resulted in actual prejudice to the defense.  Actual prejudice looks at whether the error so undermines confidence in the outcome of the proceeding that it renders the proceeding — here, the petitioner's sentencing hearing — fundamentally unfair.  The argument fails here for several reasons.  First, regardless of how familiar Billy Underwood was with petitioner's case, the record is clear that Terrinell Lyons, petitioner's trial counsel, also continued to represent him at the sentencing hearing.  Moreover, insofar as sentencing was concerned, a detailed knowledge of the facts of the case was not as important as an understanding of the sentencing options.  Petitioner had been found guilty of first-degree robbery after a jury trial, and there simply was no room for factual arguments about the crime itself at the sentencing hearing.  All the quibbling in the world would not have changed the facts that petitioner had been convicted

of first-degree robbery and had two prior felony convictions for habitual sentencing purposes. Petitioner has not pointed to any fact about the crime or the case that sentencing counsel failed to know which would have had any impact on the sentencing itself.

Next, petitioner suffered no prejudice at sentencing due to his attorney's erroneous request that his life sentence be "split." Petitioner was facing a mandatory life sentence because of his conviction for first-degree robbery, coupled with his two prior felony convictions.[12] See McLester v. Smith, 802 F.2d 1330 (11th Cir. 1986) (The word "must" as used in the Habitual Felony Offender Act leaves the court with no sentencing discretion.) Under Alabama Code § 13A-5-9(b)(3), anyone convicted of a Class A felony with two prior felony convictions faces a sentence of life or not less than 99 years in prison. First-degree robbery is a Class A felony. See Alabama Code § 13A-8-41(c). Thus, regardless of the mistaken arguments made by counsel, the only sentence available was a life or 99-year sentence, so that counsel's erroneous request for a "split sentence" did not result in prejudice to the petitioner because he received the only sentence he could receive under the law. These claims of ineffective assistance of sentencing counsel are meritless and do not warrant *habeas* relief.

Conclusion

The court finds that petitioner is not entitled to *habeas* relief. Although the court finds the use of the specificity requirement under Rule 32.6 of the *Alabama Rules of Criminal Procedure* not to

---

[12]     Petitioner also seems to make the argument that trial counsel, Lyons, was ineffective because she admitted during trial that petitioner had two prior felony convictions. Regardless, the record is clear that the prosecution produced certified copies of petitioner's prior convictions during the sentencing hearing. (Respondent's Ex. C., pp. 594-595). Counsel's alleged stipulation of the convictions did not result in prejudice to petitioner because the State proved the convictions anyway.

be appropriate under the extensive factual pleadings in this case, the claims of ineffective assistance are meritless nonetheless under <u>Strickland</u>.  Accordingly, by separate order, the court will deny the petition for writ of *habeas corpus*.

Done this <u>22nd</u> day of <u>September 2009</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
**153671**